IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDREW W. SCHMIDT,

                    Plaintiff,

vs.                                    Case No. 11-2372-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.   General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 19, 2010, administrative law judge (ALJ) George M. Bock issued his decision (R. at 15-22). Plaintiff alleges that he has been disabled since July 1, 1994 (R. at 105, 112). Plaintiff is insured for disability insurance benefits through March 31, 2009 (R. at 15). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 17). At step two, the ALJ found that plaintiff had the following severe impairments:

4

schizoaffective disorder with depressive symptoms (R. at 17).  At
step three, the ALJ determined that plaintiff's impairments do
not meet or equal a listed impairment (R. at 19).  After
determining plaintiff's RFC (R. at 19-20), the ALJ determined at
step four that plaintiff was unable to perform past relevant work
(R. at 20).  At step five, the ALJ determined that other jobs
exist in significant numbers in the national economy that
plaintiff could perform (R. at 21-22).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err by failing to consider all of the medical
opinion evidence in the record?**

The record includes a report from Michael Boniello, a
licensed clinical social worker (R. at 190-192).  The report is
dated September 5, 2008, and indicates that plaintiff has
participated in outpatient counseling with Mr. Boniello since
July 1, 1994, or over 14 years (R. at 190).  The ALJ never
mentioned the report from Mr. Boniello in his decision.

Mr. Boniello's report, in relevant part, is as follows:

> Andrew Schmidt is a thirty nine (39) year old
> Caucasian male who is presently
> applying for Social Security and/or
> Supplemental Security Income Disability
> Benefits. Mr. Schmidt holds a Masters Degree
> in Social Welfare from the University
> of Kansas and is presently unemployed. Mr.
> Schmidt has been diagnosed with
> Schizophrenia, Paranoid Type and is presently
> being managed with a combination of
> psychotropic medication, supportive therapy

and continued participation in various
support groups for dual diagnosis issues
(chemical dependency, gambling addiction,
etc.). At this time, Mr. Schmidt has come to
the realization that he is incapable of
managing the duties and responsibilities of
the occupation for which he was trained and
is in need of income, medical coverage and
vocational rehabilitation services. He
presently is limited in his ability to manage
his mental illness and is dependent largely
upon the assistance of his mother to survive
financially and emotionally. Despite his many
disabilities, Mr. Schmidt is resilient and
does not perceive that he will need to
receive Disability Benefits on a permanent
basis. He is aware, however, that as a result
of his diagnosis and the difficulties that
are associated with it, he is incapable of
managing the responsibilities associated with
being a social worker even if he is in
complete compliance medically and in
treatment.

Mr. Schmidt has participated in outpatient
counseling with me since 07/01/94. At the
time of intake, he had just been discharged
from the hospital and was in need of
continued psychiatric services on an
outpatient basis. Since that time, I have
provided him with a variety of services
including psychotherapy, addictions
counseling, case management services
(networking, referral etc.), marital
counseling and supportive therapy with
regards to managing his everyday activities.
As is typical of many individuals with a
schizophrenic diagnosis, Mr. Schmidt has gone
through several phases of non-compliance and
compliance with regards to treatment and has
experienced various levels of functioning
throughout the time I have known him. He has
struggled with a variety of addiction issues
such as alcoholism and drug dependency
although be has been sober for several years.
He has also had several issues with regards
to compulsive gambling, relationship
conflict, job readiness and sexual

6

dysfunction and continues to struggle with
regards to managing his impulsive urges to
self medicate. From my observations, Mr.
Schmidt has attempted on several occasions to
use his degree in order to gain employment
(primarily as a case manager), be a
productive member of society and to manage
his affairs independently. Although he has
the best of intentions, he has discovered
that he eventually collapses both emotionally
and psychologically under the weight of the
responsibilities associated with his work and
needs to resign in order to recuperate. At
this point, Mr. Schmidt is having a difficult
time managing his affairs independently
although he is maintaining a separate
residence, complying medically and continuing
to attend several self help groups. He has
recently come to the painful conclusion that
he may never be able to work as a social
worker and is in a quandary as to what he
will do in order to take care of himself
financially and occupationally. From my
observations, Mr. Schmidt has several of the
difficulties associated with his diagnosis
including a lack of organizational skills,
scattered thoughts, poor time management,
lack of direction without structure and low
frustration tolerance. Although be is quite
capable of connecting socially, he often
becomes exhausted emotionally with the
demands associated with social contact and
may withdraw without explanation. He is a
pleasant, articulate and appropriately
humorous man but often finds himself
distracted, impulsive and unable to
communicate effectively especially when he
feels anxious about performance. Although he
is very committed to his work, he very often
finds himself unable to keep up with the pace
of certain job expectations and becomes
highly anxious when he must "play catch-up"
in order to maintain his position. Simply
stated, despite his concerted efforts to
maintain employment and high level of
commitment to his career, Mr. Schmidt is
often hindered by the symptoms of his
diagnosis, the effects of managing his

<u>disorder in addition to maintaining his
sobriety and the emotional exhaustion that
comes with attempting to balance work with
one's personal life especially when feeling
internally chaotic</u>.

<u>From my observations, I believe that Mr.
Schmidt's mental illness presently renders
him disabled and therefore, I am highly
supportive of his application for assistance
through Social Security</u>. Like him, I believe
that these services will be a temporary
solution in that Mr. Schmidt would like to
utilize vocational rehabilitation services
to make strides in developing a more suitable
career for his future independence. In the
meantime, he will need assistance to help
support himself financially and medical
assistance (Medicare) in order to purchase
his medications, receive therapy and maintain
regular psychiatric visits. Without such
assistance, I am unsure as to how Mr. Schmidt
will continue to manage his mental illness
effectively and move towards healthier
functioning in the future. As such, I would
recommend that be receive full financial
assistance, Medicare for insurance purposes
and any vocational rehabilitation services
that are suitable for his current status.

(R. at 190-191, emphasis added).

An ALJ must evaluate every medical opinion in the record.
<u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  This
rule was recently described as a "well-known and overarching
requirement."  <u>Martinez v. Astrue</u>, 2011 WL 1549517 at *4 (10th
Cir. Apr. 26, 2011).  Even on issues reserved to the
Commissioner, including plaintiff's RFC and the ultimate issue of
disability, opinions from any medical source must be carefully
considered and must never be ignored.  Social Security Ruling

8

(SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate
every medical opinion that they receive, and will consider a
number of factors in deciding the weight to give to any medical
opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  It is clear
legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>,
121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  Furthermore,
according to SSR 96-8p:

> If the RFC assessment conflicts with an
> opinion from a medical source, the
> adjudicator must explain why the opinion was
> not adopted.

1996 WL 374184 at *7.

The term "medical sources" refers to both "acceptable
medical sources" and other health care providers who are not
"acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at *1.
"Acceptable medical sources" include licensed physicians and
licensed or certified psychologists.  20 C.F.R. § 404.1513(a)(1)-
(2); 20 C.F.R. § 404.1502.

A licensed clinical social worker is not an "acceptable
medical source" under the regulations.  20 C.F.R. § 404.1513(a).
However, evidence from "other medical sources," including a
licensed clinical social worker, may be based on special
knowledge of the individual and may provide insight into the
severity of an impairment and how it affects the claimant's
ability to function.  Opinions from other medical sources are
important and should be evaluated on key issues such as

9

impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.

Defendant concedes that the ALJ failed to even mention the report of Mr. Boniello, but argues that the failure to consider this opinion was harmless error.  Courts should apply the harmless error analysis cautiously in the administrative review setting.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  <u>Fischer-Ross</u>, 431 F.3d at 733-734; <u>Allen v. Barnhart</u>,

10

357 F.3d 1140, 1145 (10th Cir. 2004).

Defendant's argument is fatally flawed for numerous reasons. First, defendant argues that a licensed social worker's opinion is not entitled to any "special significance" (Doc. 7 at 10). This argument is without merit.  As SSR 06-03p, cited above, makes clear, evidence from "other medical sources," including a licensed clinical social worker, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.

Second, the opinions of Mr. Boniello should be considered in light of the opinions of Dr. Heisler, plaintiff's treating psychiatrist from 1998-2010, who also opined that plaintiff was unable to work due to his mental impairments (R. at 477).  An ALJ must not consider the opinions of these treating sources in isolation, but those opinions must be considered in light of the

entire evidentiary record, including the opinions and assessments of other treating sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other treating sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

Third, although defendant presents arguments about the weight that should be accorded to the opinions of Mr. Boniello, including his opinion that plaintiff is disabled, an ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

12

Fourth, even if an ALJ were to discount the opinion of Mr. Boniello that plaintiff is disabled, the ALJ must nonetheless consider the numerous opinions of Mr. Boniello concerning plaintiff's impairments and limitations, including a lack of organizational skills, scattered thoughts, poor time management, lack of direction without structure, and low frustration tolerance.  Plaintiff often finds himself distracted, impulsive and unable to communicate effectively, especially when he feels anxious about performance.  Mr. Boniello also noted that plaintiff is hindered by the symptoms of his diagnosis, the effects of managing his disorder, maintaining his sobriety and the emotional exhaustion that comes with attempting to balance work with one's personal life, especially when feeling internally chaotic.  The weight given to the opinions of Mr. Boniello regarding plaintiff's impairments and limitations will be critical in determining plaintiff's RFC.  For this reason, those opinions cannot be ignored.

Even Dr. Schulman, a non-examining consultant, opined that plaintiff had a moderate limitation in his ability to maintain attention and concentration for extended periods (R. at 409). However, without explanation, and in violation of SSR 96-8p, the ALJ did not include this limitation in plaintiff's RFC findings.[1]

---

[1]According to SSR 96-8p, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 at *7.

Dr. Pulcher, who performed a consultative examination, also noted that plaintiff's adaptability and persistence are "problematic" (R. at 394).

On the facts of this case, the court cannot confidently say that no reasonable factfinder who considered the opinions of Mr. Boniello (who treated plaintiff for over 14 years), would have resolved the factual matter of plaintiff's RFC in any other way than the ALJ did in this case.  Therefore, this case shall be remanded in order for the ALJ to consider the detailed report from Mr. Boniello and determine what weight to accord to his opinions.

When this case is remanded, the ALJ should also reexamine the report from Dr. Barash, who treated plaintiff when he was hospitalized at Two Rivers Psychiatric Hospital from December 28-30, 2006.  The ALJ noted this hospitalization, and summarized the report as follows:

> Once hospitalized, the claimant's condition
> was quickly stabilized and he was released on
> December 30, 2006 with a new medication
> regimen.

(R. at 18).  The court is concerned with the above summary by the ALJ in light of the report of Dr. Barash.  Dr. Barash's discharge summary stated the following:

> When I evaluated the patient on 12/30/2006 he
> continued to have opioid withdrawal symptoms.
> He was very irritable and angry about the
> medication changes despite agreeing to these
> the day prior.  <u>The patient demanded to be</u>

14

<u>discharged.  I did not feel the patient,</u>
<u>given his memory issues, was stable to be</u>
<u>discharged; therefore, I did discharge</u>
<u>patient against medical advice.  He became</u>
<u>very angry and threatening</u>.

(R. at 241, emphasis added).  The records from Two Rivers

Psychiatric Hospital indicated that plaintiff had a GAF on

admission of 30 (R. at 246), and a GAF upon discharge of

approximately 35 (R. at 241).[2]  Although plaintiff did not object

to the ALJ's consideration of this evidence, because the court is

already reversing and remanding for other reasons, the court will

note this problem in the hope of forestalling the possibility of

---

[2]GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>.  The scores in this case represent the following:

> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work....
>
> 21-30: **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends.

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job.  For this reason, such a GAF score should not be ignored.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

avoidable error.  See Chapo v. Astrue, (10th Cir. June 26, 2012, slip opinion at 12-13).  Therefore, on remand, the ALJ should also consider the report of Dr. Barash and the GAF scores, and determine what weight should be accorded to these opinions in determining plaintiff's RFC.

## IV.  Other issues raised by plaintiff

Plaintiff raised a number of other issues, including the failure to address plaintiff's sleep apnea at step two, the failure to address plaintiff's obesity, the ALJ's analysis of plaintiff's credibility, the weight accorded to third-party evidence, and the relative weight given to other medical sources. The court will not reach these issues because they may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, on remand, the ALJ should address the severity of plaintiff's sleep apnea, and discuss plaintiff's obesity in accordance with SSR 02-1p (evaluation of obesity).[3] The ALJ should also discuss the third party evidence cited by

---

[3]The ALJ did not discuss either impairment in his decision.  The court will therefore not engage in the task of weighing this evidence in the first instance.  See Clifton v. Chater, 79 F.3d 1007,  1009 (10th Cir. 1996); Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998). However, the burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant must provide medical evidence that he or she had an impairment and how severe it was; claimant must also provide evidence of how it affected their functioning during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

plaintiff in his brief, and indicate what weight should be accorded to this evidence.[4]  Finally, when making his RFC findings, the ALJ shall make them in accordance with SSR 96-8p. According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

    IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

    Dated this 3rd day of July, 2012, Topeka, Kansas.


                              s/ Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge


_____

    [4]Although the ALJ did discuss the report from plaintiff's mother (R. at 20), the ALJ did not mention the report prepared by C. Edmondson (R. at 150-153).